**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────

ARTHUR L. MERCER,

                              Petitioner,

          v.                                            9:19-CV-1599
                                                        (LEK/CFH)

JOHN HARPER, Superintendent,

                              Respondent.

────────────────────────────────


**APPEARANCES:**                          **OF COUNSEL:**

ARTHUR L. MERCER
Petitioner, pro se
430 Kerrigan Blvd.
Newark, New Jersey 07106

HON. LETITIA JAMES                        MICHELLE ELAINE MAEROV, ESQ.
Attorney for Respondent                   Assistant Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**


## REPORT-RECOMMENDATION and ORDER

### I.    INTRODUCTION

Petitioner Arthur L. Mercer ("Petitioner") seeks federal habeas corpus relief

pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").  Petitioner also applied to

proceed in forma pauperis ("IFP").  Dkt. No. 2, Motion for Leave to Proceed IFP; Dkt.

No. 4, Text Order (granting application to proceed IFP).

1

Respondent requested an extension of time to file a response, which was granted. Dkt. No. 6, Letter Motion (requesting an extension of time); Dkt. No. 7, Text Order (granting letter request). Respondent then requested a second extension of time, which was granted, but Petitioner opposed. Dkt. No. 8, Letter Motion (requesting an extension of time); Dkt. No. 9, Text Order (granting letter request); Dkt. No. 10, Response in Opposition to the Letter Motion; Dkt. No. 11, Text Order (denying opposition as moot). Respondent successfully requested a third extension of time. Dkt. No. 12, Letter Motion (requesting an extension of time); Dkt. No. 13, Text Order (granting letter request). Respondent filed a response. Dkt. No. 14, 16, Response; Dkt. No. 15, State Court Records ("SR").[1]

Petitioner successfully requested an extension of time to file a reply. Dkt. No. 19, Letter Request (for an extension of time); Dkt. No. 20, Text Order (granting letter request). Petitioner submitted a reply. Dkt. No. 21, Traverse.

## II.    RELEVANT BACKGROUND

### A.  Indictment

Petitioner was indicted by Grand Jury on two counts of criminal sale of a controlled substance in the third degree, in violation of N.Y. PENAL LAW Sections 220.31(1) and 220.16(1) (hereinafter, "P.L."). SR 106-07.[2] The Grand Jury found that, on or about March 11, 2014, Petitioner "knowingly and unlawfully sold a narcotic drug, to wit: cocaine," and "knowingly and unlawfully possessed a narcotic drug, to wit: cocaine, with the intent to sell it." *Id*.

---

[1] Dkt. Nos. 14 and 16 are identical. Hereinafter, Dkt. No. 14 will be used to refer to Respondent's Memorandum of Law.
[2] All citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

### B. Plea Hearings

On October 2, 2014, Petitioner, represented by counsel, appeared before Hon. Donald A. Williams in Ulster County Court.  SR 3-8.  Petitioner's counsel entered a plea of not guilty on Petitioner's behalf.  SR 4.

On February 18, 2015, Petitioner reappeared before the County Court (hereinafter, "the Court").  SR 10-42.  The Court began by observing a plea offer that had been previously made, but rejected by Petitioner, and subsequently withdrawn by the Court.  SR 11.  The Court also observed that Petitioner had expressed dissatisfaction with counsel's representation of him.  SR 11-12.  The Court informed Petitioner of his rights to representation and a speedy trial and inquired whether Petitioner wished to remain represented by counsel.  SR 12.  Petitioner initially stated he did not want to remain represented by his attorney, and a break was taken from the proceedings for Petitioner to discuss the matter further with counsel.  SR 12-13.  After the break, Petitioner stated he wanted to continue to be represented by his retained attorney.  SR 13-15.[3]  The Court then questioned Petitioner's Attorney, inquiring

---

[3] A portion of the transcript from the February 28, 2015, hearing is produced below. *See* SR 13-15.

| | |
|---|---|
| The Court: | Mr. Mercer [Petitioner], have you had sufficient time to speak to Mr. Singer [Petitioner's Attorney] -- |
| [Petitioner]: | Yes. |
| The Court: | -- during this break? What is your decision as to whether or not you wish Mr. Singer to continue to represent you? |
| [Petitioner]: | I might as well take him. He got the money. Yes. |
| The Court: | Sir -- |
| [Petitioner]: | Yeah, I want him to represent me. |
| The Court: | I'm sorry? |
| [Petitioner]: | Yes. |
| The Court: | You wish to have [Mr. Singer] continue to represent you? |
| [Petitioner]: | Yes |
| The Court: | This is your decision, sir. It's not the Court's. It's not Mr. Singer's. |
| [Petitioner]: | Well he ain't gonna give me my money back so. |
| The Court: | That is between you and Mr. Singer.  However, if you do not want him to represent you[,] you have a right to let him go.  And if then you cannot afford an attorney[,] I will appoint the |

whether Counsel had any irreconcilable differences with Petitioner which would prevent him from representing Petitioner to the best of Counsel's ability.  SR 15.  Counsel stated he did not have any irreconcilable differences with Petitioner, and Petitioner agreed.  SR 16-17.  The Court again asked whether Petitioner was satisfied with Counsel's representation of him, and Petitioner confirmed he was satisfied and wished to remain represented by that attorney.  SR 17.

The Court then informed Petitioner it would continue the offer which had been previously rejected and withdrawn.  SR. 17-18.  The Court explained that if Petitioner wished to plead guilty, he would be sentenced to six years in state prison with three years of post-release supervision.  SR 18-19.  Petitioner then stated he wished to plead guilty.  SR 21.  The Court then questioned Petitioner as follows:

> The Court:     All right. And it's your desire to plead guilty?
> [Petitioner]:  Yes.
> The Court:     How old are you, sir?
> [Petitioner]:  53.
> The Court:     Your date of birth?
> [Petitioner]:  10-27-61.
> The Court:     Your address before you were incarcerated?
> [Petitioner]:  Hummel House.  280 Salem Road.
> The Court:     In what town?
> [Petitioner]:  I think it's Eddyville.  I think it's closer to Eddyville.

---

Public Defender to represent you. Do you fully understand all of this?
[Petitioner]: Yes.
The Court:  I'm going to do what I can to protect your rights here; do you understand that?
[Petitioner]: Yes.
The Court:  Knowing that do you have any other questions of [t]he Court?
[Petitioner]: No.
The Court:  Do you have any other questions of Mr. Singer?
[Petitioner]: No.
The Court:  What is your decision?  Do you wish to have Mr. Singer to continue to represent you?
[Petitioner]: Yes.

4

| | |
|---|---|
| The Court: | Before you came to court today have you taken any drugs, any alcohol, or any medication? |
| [Petitioner]: | No. |
| The Court: | Do you suffer from any physical or mental impairments that make it difficult for you to understand what is happening today? |
| [Petitioner]: | Yes. |
| The Court: | What would that be, sir? |
| [Petitioner]: | I have bipolar, depression. |
| The Court: | Are you taking any medication for that? |
| [Petitioner]: | No.  I missed it. |
| The Court: | All right.  Are you having any problems understanding what I'm saying today? |
| [Petitioner]: | Somewhat, but I'm just going to say yes. |
| The Court: | Yes[,] you're having problems understanding[,] or [yes,] you do understand? |
| [Petitioner]: | I do understand. |
| The Court: | All right.  Mr. Singer [Petitioner's Attorney], you have had the opportunity to speak to your client on numerous occasions, today and on other occasions.  Is it your opinion that he is in control of his faculties? |
| [Pet. Atty.]: | Completely. |
| The Court: | Is it your opinion that he fully understands the nature of these proceedings? |
| [Pet. Atty.]: | Even more than I do, yes. |
| The Court: | Is it your belief and understanding from this that he understands [t]he Court's questions? |
| [Pet. Atty.]: | Absolutely. |
| The Court: | Do you agree with that, sir? |
| [Petitioner]: | Yes. |
| The Court: | And it's [t]he Court's opinion in speaking to [Petitioner] today, in speaking to him on other occasions, judging his ability to make eye contact, and giving appropriate answers to difficult questions that he is in control of his faculties and that he does indeed understand the nature of these proceedings.  Do all of you agree?  Mr. Grimes [the Assistant District Attorney]? |
| Mr. Grimes: | Yes, your honor. |
| The Court: | Mr. Singer? |
| [Pet. Atty.]: | Yes. |
| The Court: | Mr. Mercer? |
| [Petitioner]: | Yes. |

| The Court: | All right.  Sir, other than that do you have any other impairments that could possibly interfere with your ability to understand what is happening today? |
| --- | --- |
| [Petitioner]: | No. |

SR 21-24.  The Court next advised Petitioner that as a prior felony offender, his maximum possible sentence for one of the two counts charged, if convicted after trial, would be twelve years in state prison with three years post-release supervision.  SR 24. Petitioner indicated he understood.  *Id*.  The Court further explained that because of Petitioner's prior convictions, he could potentially qualify as a persistent felony offender and sentenced as a Class A1 felon, and face anywhere from 15 to 25 years to life in prison.  SR 24-25.  Petitioner again confirmed he understood.  SR 25.  Finally, the Court explained to Petitioner that if he were tried and convicted, the Court could sentence him to the amount set out in the plea offer, a lesser sentence, or either of the maximum sentences previously described.  SR 25-26.  Petitioner stated he understood.  SR 26.

The Court asked whether, understanding the potential results of a post-trial conviction, Petitioner wished to accept the plea bargain.  SR 26.  Petitioner stated he did wish to accept the plea.  *Id*.  The Court then engaged in the following colloquy with Petitioner and his Counsel:

| The Court: | All right.  Have you had sufficient time to speak to your attorney about this plea? |
| --- | --- |
| [Petitioner]: | Yes. |
| The Court: | Are you satisfied with his representation of you? |
| [Petitioner]: | Yes. |
| The Court: | Mr. Singer [Petitioner's Attorney], have you had a chance to discuss the [strengths] and weaknesses of the prosecution's case with your client? |
| . . . | |
| [Pet. Atty.]: | Yes. |
| The Court: | Is that accurate, sir? |

[Counsel conferred with Petitioner]

[Petitioner]:    Yes.

The Court:    Do you have any more questions of [your counsel] concerning that issue?

[Petitioner]:    No.

The Court:    Mr. Singer, have you discussed with your client the advisability of entering a plea of guilty?

[Pet. Atty.]:    Yes.

The Court:    Is that accurate, sir?

[Petitioner]:    Yes.

The Court:    Do you have any further questions of [your counsel] about that issue?

[Petitioner]:    No.

The Court:    Now has anyone anywhere in court or out of court made any other promises to you as to what the sentence will be?

[Petitioner]:    Not the sentence.

The Court:    And when I say that I mean anyone anywhere, your attorney, the District Attorney, [t]he Court, fellow inmate, anyone made any other promises as to what sentence you'll get?

[Petitioner]:    No.

The Court:    The second question is has anyone anywhere in court or out of court coerced you or forced you to enter this plea?

[Petitioner]:    Not the plea.

The Court:    All right. And what I mean by that is the D.A. forcing you to plead guilty?

[Petitioner]:    No.

The Court:    Is your attorney forcing you to plead guilty?

[Petitioner]:    No.

The Court:    Is [t]his Court coercing you or forcing you to plead guilty?

[Petitioner]:    No.

The Court:    Are there any inmates doing that to you?

[Petitioner]:    No.

The Court:    Police officers?

[Petitioner]:    No.

The Court:    Correction officers?

[Petitioner]:    No.

The Court:    Are you telling me that the decision you're making to plead guilty is one that you're making voluntarily?

[Petitioner]:    Yes.

The Court:    Intelligently?

[Petitioner]:    Yes.

7

SR 26-30.  The Court next advised Petitioner of the constitutional rights he would forfeit by entering a plea of guilty, including the right to: a jury trial, where Petitioner would be presumed innocent; call witnesses to testify; cross-examine witnesses called against him; and take the stand and testify himself.  SR 30-32.  Petitioner confirmed he understood that he would forfeit these rights by pleading guilty and stated he still wished to proceed in entering the plea.  SR 32.

The Court next informed Petitioner under the terms of the plea, he would be obligated to give up his right to appeal.  SR 32-34.  Petitioner stated he understood, and the Court adjourned so Petitioner and his attorney could review a written waiver of appeal.  SR 34-35.  Petitioner confirmed he understood the waiver, and both he and his attorney signed the waiver.  SR 35-36.

The Court again confirmed nobody was forcing Petitioner to plead guilty, Petitioner was not made any other promises about sentencing, and that Petitioner was satisfied with his attorney.  SR 37-38.  Thereafter, Petitioner admitted by his plea of guilty that, on March 11, 2014, he knowingly and unlawfully sold the narcotic drug cocaine.  SR 38.  The Court accepted Petitioner's plea and set a date for sentencing. *Id*.

Finally, the Court explained Petitioner would be sentenced as promised if certain conditions were met; however, if Petitioner violated those conditions, the Court would no longer be bound by the sentencing promise and could impose a sentence it deemed appropriate.  SR 38-39.  Moreover, the Court explained Petitioner would not be permitted to withdraw his plea of guilty.  SR 39.  First, Petitioner was required to answer the questions asked by the Ulster County Probation Department officer in a manner that

8

was honest, respectful, and consistent with what Petitioner admitted to the Court.  SR

39-40.  Additionally, the Court explained Petitioner must not be charged with committing

any new offenses under the Penal Law of the State of New York or any other offense

that is the equivalent of a misdemeanor or higher under the Penal Law. SR 40-41.

Petitioner stated he understood these terms and had no further questions for the Court.

SR 41.

### C. Initial Sentencing Hearing

On April 21, 2015, Petitioner returned to Ulster County Court for sentencing.  SR

44-49.  The following exchange occurred:

| | |
|---|---|
| The Court: | Is there any legal cause why sentence cannot be imposed? |
| [Pet. Atty.]: | None that I know of, your Honor. |
| The Court: | It was my understanding your client wants to withdraw his plea of guilty? |
| [Pet. Atty.]: | He hasn't informed me of that at all. |
| The Court: | Is that accurate, sir? |
| [Petitioner]: | Yes. |
| The Court: | What is the basis for you wishing to withdraw your plea of guilty? |
| [Petitioner]: | On the base that I [sic] like to challenge a few things in my case. |
| The Court: | What would you like to challenge? |
| [Petitioner]: | My prior convictions. |
| The Court: | Your prior convictions meaning what, sir? |
| [Petitioner]: | Meaning what's unconstitutionally obtained, which they were. |
| The Court: | That's not a basis to withdraw your plea of guilty. What other arguments do you have to withdraw your plea of guilty. |
| [Petitioner]: | Just want to take back my plea. |
| The Court: | Well, you can't just take back your plea, sir, because you entered a knowing, intelligent, voluntary plea.  There has to be a legal reason for you to withdraw it.  Do you have any legal reason to withdraw your plea of guilty? |
| [Petitioner]: | May I speak to my attorney? |

SR 45-46.  A recess was taken in order to allow Petitioner to confer with his attorney. *Id.*

Following the recess, the Court asked Petitioner's Attorney if there was any legal cause why Petitioner's sentence could not be imposed.  SR 46.  Petitioner's Attorney answered, "[n]one. I have communicated with my client.  He has not been able to utter any legal reason why."  SR 46-47.  The Court, declining to put Counsel in conflict with Petitioner, asked Petitioner whether he wished to withdraw his plea of guilty.  SR 47. Petitioner stated he did because he had an upcoming parole hearing and asked whether the Court would run his sentences concurrently.  SR 47.  The Court explained that, depending on when Petitioner was on parole, Petitioner may be subject to mandatory consecutive sentences.  SR 47.  However, the Court continued, the issue was moot, as, based on the presentence investigation report, Petitioner may have lied or given inconsistent statements to the probation officer, in violation of the conditions previously set out by the Court.  SR 47.  Accordingly, the Court set a date for an *Outley* hearing to determine whether Petitioner violated the Court's conditions for receiving the promised sentence and whether the sentence should be enhanced.  SR 47-48.

### D. *Outley* Hearing

On July 16, 2015, Petitioner and his attorney returned to Court for the continuation of sentencing and for the purpose of conducting a *Hicks* and/or *Outley* hearing.[4]  SR 51-85.  The Court asked whether Petitioner wished to deny or contest the allegation(s) that he violated the Court's admonitions.  SR 53.  Petitioner's Attorney indicated he did wish to contest the allegation(s).  SR 53.  When asked about the nature

---

[4] *See generally, People v. Outley*, 80 N.Y.2d 702 (1993); *People v. Hicks*, 98 N.Y.2d 185 (2002).

of Petitioner's contest, Counsel attempted to explain, in a manner that would not violate Petitioner's attorney-client privilege, that in every statement Petitioner made to him, except for during the entry of a plea of guilty in court, Petitioner did not admit that he had violated the law.  SR 53-54.

The Court read from a copy of the pre-sentence investigation report, which stated "[Petitioner] was interviewed for this report at the Ulster County Jail on March 27th, 2015[,] at which time he was respectful but less than forthcoming about his involvement in the instant offense."  SR 56-57.  The People called Probation Officer Kathryn Brown ("Probation Officer") as a witness.  *Id.*  The Probation Officer stated, under oath, she was assigned to conduct a pre-sentence investigation for Arthur Mercer and identified Petitioner in Court.  SR 59-60.  The People asked whether Petitioner was able to coherently answer the Officer's questions, and she stated he was.  SR 60.  The Probation Officer testified that she asked Petitioner what he had done that caused him to be arrested, and Petitioner answered that the Kingston Police Department told Petitioner he sold drugs.  SR 61.  The Probation Officer recalled that she asked what Petitioner himself had done, "[a]t which point [Petitioner] said that he had not sold any drugs and that he wanted to withdraw his plea and take [his case] to a trial."  *Id.*  The Officer confirmed when she asked about March 11, 2014, specifically, Petitioner told her "[I] did not sell drugs."  *Id.*

Petitioner's Attorney conducted a cross examination of the Probation Officer.  SR 62-66.  Counsel asked the Officer whether she checked for Petitioner's health records or whether he had been given any substances, and the Probation Officer stated she had not.  SR 62.  However, the Probation Officer explained Petitioner appeared to be

cognizant of what she had said during the interview, explaining "[Petitioner] answered the questions that I asked him in a coherent manner [and h]is responses were appropriate to the questions that I asked." *Id.* In response to questions, the Probation Officer testified she did not call Petitioner's Attorney to inform him that Petitioner would be interviewed. SR 63-64. The Probation Officer further testified she did not contact Petitioner's Counsel to inform him that Petitioner denied committing the crime, nor did she send Counsel a copy of the report she generated. SR 64-65. The witness was excused from the stand, and the People rested. SR 66.

After briefly speaking with his client, Counsel called Petitioner to the stand. SR 67. Counsel began to ask Petitioner about their prior meetings and Petitioner's desire to go to trial. SR 68. Counsel asked Petitioner whether he was truthful when he gave answers to the Court when he entered his plea of guilty, and Petitioner stated he was not. SR 72. Counsel also made legal argument on Petitioner's behalf. SR 73-77. Counsel argued Petitioner told the Probation Officer what the Court advised him to– the truth. SR 76.[5] He further averred the Probation Department observed Petitioner was depressive and anxious at the time the interview was conducted. SR 77.

The Court issued its findings:

> The Court finds pursuant to . . . *The People v. Hicks* . . . Under *People v. Coffey* . . . where the defendant violated the express conditions of his plea agreement by giving the Probation Department an account of his criminal conduct which was inconsistent with statements made during the plea allocution and failed to accept responsibility for his actions, that that could be deemed a violation of the conditions of his receiving a sentence and that his sentence could properly be enhanced.
> [In] *People* [*v.*] *Caza* . . . County Court specifically advised the defendant that it would not be bound by its

---

[5] For Counsel's full argument, *see* SR 73-77.

conditional sentencing commitment, should she fail to cooperate in the preparation of the pre-sentence investigation report, and that under those circumstances she would not be entitled to withdraw her plea.

During the interview itself the defendant gave evasive and contradictory answers to questions. As much as defendant was fully informed during the plea colloquy of the conditions of the plea agreement and the consequences of non-compliance, the enhanced sentence under this Court would also be permissible.

I also cite *the People* [*v.*] *Gonzalez* . . . for the same propositions. The Court finds in the instant case that this defendant was fully advised of all of his rights.

[This Court f]ully explained that if he violated any specific conditions imposed by the Court, that indeed the Court would feel free to change the sentence, enhance the sentence, and the defendant would not be permitted to withdraw his plea of guilty.

That the defendant did indeed violate those conditions by misrepresenting his criminal conduct to the Court and/or being evasive and giving inconsistent answers to the questions by the Probation Department; indeed specifically violating the exact example that the Court gave to the defendant of what an inconsistent statement would be.

SR 77-79 (citations omitted).[6] The Court then inquired whether there was any legal reason why sentence could not be imposed, and Petitioner's Attorney answered there was no legal reason why sentencing could not proceed. SR 79-80. Petitioner and the Court received a copy of Petitioner's prior felony information, and the Court asked whether Petitioner wished to deny or controvert any of the allegations contained in the information. SR 80. The following discussion ensued:

The Court:   Does your client wish to deny or controvert any of the allegations contained in the prior felony information?

. . .

[Pet. Atty.]:   Your Honor, [Petitioner controverts that on August 10th, 2011[,] in Ulster County that he was

---

[6] *See People v. Hicks*, 98 N.Y.2d 185 (2002); *People v. Coffey*, 77 A.D.3d 1202 (3d Dept. 2010); *People v. Caza*, 115 A.D.3d 1118 (3d Dept. 2014); *People v. Gonzales*, 9 Misc.3d 344 (Sup. Ct. New York County 2005).

|  | convicted of a criminal sale of a controlled substance in the third degree. |
| The Court: | He's contesting that allegation? |
| [Pet. Atty.]: | Yes. |
| The Court: | All right. We'll have to -- |
| [Pet. Atty.]: | Yes, in a Constitutional manner -- that it was unconstitutional on that date for him to be convicted. |
| The Court: | Okay. And what is the legal theory that it was unconstitutional? |

. . .

| [Petitioner's Counsel conferred with Petitioner] |
| The Court: | So he's not denying the fact that it occurred? He's saying it was unconstitutional? |
| [Pet. Atty.]: | That is correct, your Honor. |
| The Court: | Is that correct, Mr. Mercer? You're not denying that you were convicted of criminal sale of a controlled substance in the third degree on August 10th of 2011? |
| [Petitioner]: | I'm not agreeing -- |
| The Court: | Are you saying it factually -- that it didn't happen? |
| [Petitioner]: | It was unconstitutional -- |
| The Court: | Okay, hold on. |

\*\*\*

| The Court: | So my question is, sir; factually, were you convicted on August 10th, 2011[,] of the crime of criminal sale of a controlled substance in the third degree? Were you convicted of that? |
| [Petitioner]: | Yes. |
| The Court: | I take it you're alleging that that was an illegally obtained conviction? |
| [Petitioner]: | Yes. |
| The Court: | And what is the allegation -- what is your -- you're saying it was unconstitutional? |
| [Petitioner]: | Yes. |

SR 80-82. The Court asked Petitioner's Attorney to articulate the constitutional violation his client claimed. SR 82-83. Counsel for Petitioner stated he was not prepared to answer and requested a period of time to confer with Petitioner. SR 83. Accordingly, the Court adjourned in order to allow the parties to develop arguments about the constitutionality of Petitioner's prior felony conviction. SR 83-84.

The parties returned to Court on July 29, 2015, to continue the hearing and sentencing. SR 87-94. Petitioner's attorney, Mr. Singer, made an application to the Court to be relieved as counsel. SR 88-89. The Court explained to Petitioner his right to an attorney and asked what Petitioner wished to do about Mr. Singer's representation. SR 89-91. Petitioner stated he wanted Mr. Singer to be relieved or discharged. SR 90-91. The Court then relieved Mr. Singer, who provided Petitioner's file to him. SR 91-92. The Court adjourned the proceedings, providing Petitioner two weeks to retain the services of another attorney. SR 91-92.

Petitioner reappeared before the Court on August 13, 2015. SR 96-100. Petitioner had not obtained substitute counsel and indicated he could not afford an attorney. SR 97. Accordingly, the Court assigned Duchess County Conflict Defender, Mr. Hoerter (hereinafter "Conflict Defender"), to represent Petitioner. SR 97-98. Proceedings were adjourned to allow the Conflict Defender to review the case. SR 98-99.

### E.  Subsequent Sentencing Hearing

On August 27, 2015, Petitioner, represented by the Conflict Defender, returned to Court. SR 210-27. The Conflict Defender stated he had meet with and listened to Petitioner and did not believe Petitioner had articulated, or was able to articulate, a legally-cognizable basis to withdraw his plea of guilty or challenge his previous felony convictions; however, Petitioner had instructed the conflict defender that he wished to proceed with the withdrawal and challenge. SR 211. Petitioner requested to be heard on the challenges. SR 211.

Petitioner submitted to the Court a document marked for identification as Exhibit 1, which the Court described as a letter Petitioner purportedly typed, wherein Petitioner requested to withdraw his plea of guilty.  SR 213.  The Court denied Petitioner's application.  SR 214.  Petitioner submitted another document, marked for identification as Exhibit 2, which the Court deemed a form letter.  SR 214-15.  The "Omnibus Motion" contained: an affidavit in support of the omnibus motion; demands for a Bill of Particulars and laboratory reports; a request to suppress evidence; a request for dismissal of the indictment on the basis that the evidence was legally insufficient; a statement that the conviction was unconstitutionally obtained; a statement of facts; a copy of a portion of Article 400 concerning presentence proceedings; and a request that the Court recuse itself from the matter.  SR 215.

The Court stated for the record that it was not aware of any legal basis requiring disqualification, and it did not believe anything factually would require its recusal.  SR 215-16.  The Court denied Petitioner's application for omnibus relief for all of the reasons stated on the record that day and at previous proceedings.  SR 216.  The Court inquired whether Petitioner had any other requests, and Petitioner stated he would like another attorney because the assigned Conflict Defender would not adopt Petitioner's motion.  *Id*.  The Court denied Petitioner's request, explaining it had assigned an attorney that had represented Petitioner effectively.  *Id*.

Turning to the Prior Felony Information, the Court asked Petitioner's Attorney whether Petitioner wished to deny or controvert any of the allegations contained therein.  SR 217.  The Conflict Defender stated Petitioner wished to controvert all of the allegations set forth in the Prior Felony Information, but he himself was not aware of any

16

legally cognizable reason to challenge the allegations.  SR 217-18.  The Court engaged

in the following discussion with Petitioner:

| | |
|---|---|
| The Court: | Let[s] start step by step.  What is your challenge to the allegation that within 10 years of the commission of this crime you were convicted of another felony, sir? |
| [Petitioner]: | What? |
| The Court: | Are you saying that you are not a prior felony offender? |
| [Petitioner]: | Yes, as that goes, yes. |
| The Court: | What is the basis of that? |
| [Petitioner]: | You got my work up there.  You have my basis up there. I just wrote it yesterday. |
| The Court: | Tell me what they are, sir. |
| [Petitioner]: | One is the fact that they, they used the John Doe on my paperwork and in the same letter it says that I was identified by officer McDermott. |
| The Court: | So you are saying you are not the person who was convicted in Ulster County Court, this court, on August 10 of 2011, which since I am the only Ulster County Court Judge I am assuming that was me.  Did I preside over this?  I don't recall.  Surprisingly to me, I do not recall.  When did I take the bench, 2010[?]  Mr. Grimes [the Assistant District Attorney]?  Can you check also please, Jim?  So Mr. Mercer, you are saying you are not the person that was convicted in this court on August 10th, 2011[,] of the [class] B felony of criminal sale of controlled substance in the third degree? |
| [Petitioner]: | Umm, as it pertains to that, yeah, that wasn't me. |
| The Court: | That's not you?  I'm sorry? |
| [Petitioner]: | It was me, but this is crazy, I am trying to -- |
| The Court: | You are right about that, this is crazy.  Was it you or was it not you, sir? |
| [Petitioner]: | That's not a constitutional question. |
| The Court: | Are you admitting it was you August 10, 2011[,] who was convicted in this court of the class B felony of criminal sale of controlled substance [in the] third degree or are you denying that? |
| [Petitioner]: | Well, according to the constitution -- |
| The Court: | Just tell me yes or no, sir, was it you or was it not? |

17

[Petitioner]:    Well, according to the constitution --

[Pet. Atty.]:    You are jumping ahead.

The Court:    First of all, it was not this court, it was a visiting judge, Judge Andrew Ceresia.  Was it you or was it not, sir, that was convicted of that crime in front of Judge Ceresia?

[Petitioner]:    Yes, it was me in front of him but I'm telling you according to the constitution I'm not -- all I got to do is prove they are not constitutional.

The Court:    So you are saying that conviction was taken in violation of your constitutional rights?

[Petitioner]:    Yes.

The Court:    Under what theory?

[Petitioner]:    Under the theory that, okay, under the suggestion that they violated my constitutional rights by using a John Doe place holder again and --

The Court:    So the indictment read John Doe initially?

[Petitioner]:    Yeah.

The Court:    And that's your basis that there's a constitutional violation?

[Petitioner]:    Yes, that is a constitutional issue because of the way they did it.  They didn't give me no opportunity.

The Court:    That application is denied.  Do you have any further argument you would like to address to the Court?

[Petitioner]:    Yeah.  My, the second one down.  I just did a third one, so.

[Pet. Atty.]:    He is referring to Exhibit 1 before the Court.

The Court:    The omnibus motion?

[Pet. Atty.]:    No, Exhibit 1 was the first thing he sent up.

The Court:    I have already reviewed that and denied the application based on the exhibit which was a one-page document. Any other arguments, sir, before I impose sentence?    Any other arguments?  Other than what you have in Court Exhibit 1, I have that before me, do you have any other arguments?

[Petitioner]:    For that same issue or just another one?

The Court:    You have been charged with being a prior felony offender.  You have admitted that you were the person that was convicted of criminal sale of a controlled substance in the third degree on August 10 of 2011.

[Petitioner]:    When did I do that?

18

> The Court: When I asked you if you were the person that was convicted of that in front of Judge Ceresia and you said yes; you alleged that that plea happened unconstitutionally based upon your arguments and what I have marked as Court Exhibit 1. Do you have any other arguments above and beyond what is in Court Exhibit 1?
>
> [Petitioner]: Not at hand.

SR 218-22. The Court found, based on Petitioner's admission and the absence of any constitutional or statutory infirmity, that Petitioner was indeed a prior felony offender as defined by law. SR 222.

The Court provided Petitioner and his attorney a final opportunity to be heard on the Court's prior decision that Petitioner was in violation of the Court's admonition relating to the Petitioner's cooperation with the Probation Department. SR 224. Both declined to provide additional comment. SR 224. After receiving recommendations from the People and Petitioner's Attorney, the Court sentenced Petitioner to an eight-year determinate term, and three-years post-release supervision. SR 224-26.

## F. Direct Appeal

Petitioner appealed from the judgment of conviction. *See People v. Mercer*, 169 A.D.3d 1112 (N.Y. App. Div. 3rd Dept. 2019).[7] Petitioner filed a counseled brief in the Appellate Division, Third Department, arguing: (1) his guilty plea was not knowing and voluntary because Petitioner had not taken the medication prescribed for his psychiatric condition at the time the plea was entered, and he had trouble understanding the proceedings (SR 144-46); and (2) Petitioner's retained attorney was ineffective for failing to move to withdraw Petitioner's guilty plea on the basis of Petitioner's mental

---

[7] A copy of the Third Department's decision affirming Petitioner's judgment of conviction is included in the state court records. *See* SR 369-74.

incapacity at the time the plea was entered (SR 146-48).  Petitioner also submitted a

supplemental brief on his own behalf, arguing: (1) the trial court erred in denying

Petitioner's challenge to the constitutionality of his prior felony conviction, and violated

his due process rights by acting on the People's behalf during the sentencing hearing

(SR 250-53); and (2) Petitioner was denied the effective assistance of both trial and

appellate counsel throughout his 2007 judgment of conviction – which served as the

basis for his sentencing as a prior felony offender – and the subsequent appeals

process (SR 254-55).

The People responded that: (1) Petitioner's challenge to the voluntariness of his

plea was not preserved for appellate review, because no post allocution motion was

made, and is also belied by the record of the plea hearing proceedings (SR 277-82);

(2) Petitioner was not denied the effective assistance of counsel at any stage of the

instant proceedings (SR 282-85); (3) the county court substantially complied with CPL §

400.21 in sentencing Petitioner as a second felony offender (SR 285-86); and (4) any

challenge to Petitioner's prior felony conviction was barred by collateral estoppel, as the

conviction had been unanimously affirmed by the Appellate Division (SR 286).[8]

Petitioner, pro se, filed a reply brief.  *See* SR 363-69.  In his brief, Petitioner

alleged "respondent [the People] filed false statements and false information [in their

brief] with this court"; therefore, the People filed "a false instrument in violation of [New

York] penal law [§] 175.35[,] which is a [Class] (E) felony[,]" urging that "respondent

should be treated accordingly [sic] charged." SR 364.[9]  Petitioner averred that the

---

[8] *See People v. Mercer*, 81 A.D.3d 1159 (3rd Dept. 2011) (affirming Petitioner's 2007 judgment of
conviction upon a plea of guilty of the crime of criminal sale of a controlled substance in the fourth
degree).
[9] *See* New York Penal Law § 175.35:

People provided false information in stating that "'County Court [s]ubstantially [c]omplied with the procedures set forth in C.P.L. [§] 400.21[,']" because "respondent fail[ed] to mention that . . . the burden was [on the People] . . . [to] establish [Petitioner]'s prior convictions exist [sic] [.]"[10]  *Id*.  Petitioner further claimed the People made another false statement by arguingm "'[t]he [r]ecord [f]urther [d]emonstrates that the [Petitioner] was given a full and fair opportunity to be heard" in challenging his prior felony conviction. SR 365.

The Appellate Division, Third Department affirmed Petitioner's judgment of conviction.  *See Mercer*, 169 A.D.3d 1112.  The Court first addressed Petitioner's claim that his plea of guilty was not knowing and voluntary, finding, "[a]lthough not precluded by [Petitioner's] uncontested waiver of the right to appeal . . . [the] claim [was] unpreserved as [Petitioner] did not make an appropriate postallocution motion challenging the voluntariness of his guilty plea on this basis despite having an opportunity to do so."  *Id*.; 169 A.D.3d at 1113-14 (citations omitted).  The Court further observed that an exception to the preservation rule was not applicable as Petitioner "did not make any statements during the plea colloquy that negated his guilt or called into question the voluntariness of his plea."  Id. at 1114.[11]  Turning to Petitioner's ineffective

---

> A person is guilty of offering a false instrument for filing in the first degree when: (1) knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation . . . Offering a false instrument for filing in the first degree is a class E felony.

[10] Petitioner appeared to clarify this point in a subsequent letter to the Court of Appeals, stating "it [was] the [County Court] Judge [who was] the one that [Petitioner] argued with and not the [P]eople of the state of New York." SR 405.

[11] *See, e.g., People v. Lopez*, 71 N.Y.2d 662, 665-66 (1988):

assistance claim, the Court found, "[a]lthough [the] claim [was] not foreclosed by [Petitioner's] appeal waiver insofar as it impact[ed] the voluntariness of his guilty plea, it [was] also unpreserved given [Petitioner's] failure to make an appropriate postallocution motion on [that] basis." *Id*. (citations omitted). Finally, the Court declared, "[w]e have considered the remaining contentions raised by [Petitioner] in his pro se supplemental briefs and find them to be unavailing." *Id*.

Petitioner submitted a counseled application for leave to appeal the Third Department's decision to the Court of Appeals. SR 376-81. Petitioner's arguments were identical to those raised in his counseled brief to the Appellate Division. SR 377-81. Petitioner also filed a pro se supplemental application for leave to appeal. SR 387-88; 391-401. The People opposed Petitioner's application for leave. SR 383-85.

The Court of Appeals denied Petitioner's application for leave. *People v. Mercer*, 33 N.Y.3d 979 (2019).[12] Petitioner, pro se, submitted an application for reconsideration of the Court of Appeals' denial of leave. SR 409-411. Petitioner's application for reconsideration was denied. *People v. Mercer*, 33 N.Y.3d 1071 (2019).

## III.    PETITION

Petitioner challenges his 2015 judgment of conviction in Ulster County upon a guilty plea of criminal sale of a controlled substance in the third degree. Pet. at 1-25.

---

> In order for there to be a question of law reviewable by this court, the trial court generally must have been given an opportunity to correct any error in the proceedings below at a time when the issue can be dealt with most effectively . . . In that rare case, however, where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, we have held that the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary[.]

(citations omitted).

[12] The Court of Appeals decision denying leave is included in the state court records. *See* SR 403.

Petitioner argues that he is entitled to federal habeas relief because: (1) the County Court improperly argued the People's case during Petitioner's challenge to the constitutionality of his prior conviction (Pet. at 5-6; 15); (2) the People filed false statements, false information, and a false instrument with the Appellate Division, Third Department (Pet. at 6-8; 15-16); (3) Petitioner was denied effective assistance of counsel (Pet. at 8-9; 16-17); and (4) his entry of a plea of guilty was not voluntarily, knowingly, and intelligently made (Pet. at 10-11).

## IV.    DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based on the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks and citation omitted).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(i)-(ii); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("State prisoners must give the state courts one full opportunity to resolve any constitutional issues[.]").  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  This is particularly true where the grounds raised are meritless.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

### A.  Sentencing as a Second Felony Offender

Petitioner first avers that he is entitled to habeas relief because the County Court improperly argued the People's case during Petitioner's challenge to the constitutionality of his prior conviction during the August 27, 2015, sentencing hearing.  Pet. at 5-6; 15. Petitioner claims "the [C]ourt played [J]udge and district attorney" when "the [C]ourt took[] it upon itself to question [P]etitioner" about his prior convictions.[13]  Pet. at 15.

In his Petition, Petitioner did not specify which of his constitutional rights was violated by the County Court's questioning of him about his prior convictions.  *See* Pet. Respondent argued this claim is not cognizable on habeas review.  Dkt. No. 16 at 13-15.  In his Traverse, Petitioner averred "[t]he [County C]ourt and [the P]eople [have] no qualified immunity when [they] violated [P]etitioner's constitutional right to due process[

---

[13] Petitioner further explained "it was the Court that got up from the bench to become the [P]eople and argue the challenge[.]" Pet. at 6.

]when the [C]ourt argued the [P]eople's case in violation of the state CPL 400.21 . . . ."
Traverse at 4.

"A federal court may entertain a state prisoner's habeas corpus petition only to
the extent that the petition alleges custody in violation of the Constitution, laws, or
treaties of the United States." *Beverly v. Walker*, 899 F. Supp. 900, 908 (N.D.N.Y.
1995) (citing 28 U.S.C. § 2254(a)).  "Claims arising out of a state court sentencing
decision are thus not typically cognizable on federal habeas review." *Larweth v.
Conway*, 493 F. Supp.2d 662, 681 (W.D.N.Y. 2007) (citations omitted).  However,

> Federal courts recognize two contexts in which the
> adjudication of a state criminal defendant as a second-felony
> offender is grounds for federal *habeas* relief: (1) where the
> predicate conviction was obtained unconstitutionally, *see,
> e.g., Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 404-
> 05 (2001); or (2) where a state court fails to afford criminal
> defendants sufficient due process in the predicate-felon
> adjudication process, *see, e.g., Larweth v. Conway*, 493 F.
> Supp.2d 662, 682 (W.D.N.Y. 2007) ("Due process requires
> that a defendant to be sentenced as a repeat offender 'receive
> reasonable notice and an opportunity to be heard relative to
> the recidivist charge.'") (quoting *Oyler v. Boles*, 368 U.S. 448,
> 452 (1962)).

*Mosley v. Superintendent of Collins Corr. Facility*, No. 9:11-CV-1416 (GTS/RFT), 2015
WL 277133, at *7 (N.D.N.Y. Jan. 22, 2015) (emphasis in original).  Liberally reading the
instant Petition and Traverse together, Petitioner alleges a violation of his due process
rights under the Fourteenth Amendment during the sentencing colloquy.[14] [15]

---

[14] *See, e.g., Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [Petitioner] is a *pro se* litigant,
we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they
suggest.") (citation omitted).

[15] However, to the extent that Petitioner now wishes to challenge the constitutionality of his 2007 felony
conviction, he is now precluded from doing so in the instant § 2254 petition because he is no longer in
custody on the basis of this conviction. *See Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 396-
97 (2001) (finding that in general, absent certain exceptions that do not apply in the instant case,
postconviction relief is not available when a prisoner challenges a current sentence on the ground that it

During sentencing proceedings, "[i]t is settled that due process requires that a defendant have notice and an opportunity to contest the validity or applicability of the prior convictions upon which a statutory sentencing enhancement is based." *United States v. Moore*, 208 F.3d 411, 414 (2d Cir. 2000) (citing *Oyler*, 368 U.S. at 452). Moreover, "[t]he sentencing process itself must satisfy the requirements of the due process clause." *Brown v. Duncan*, No. 9:00-CV-290 (GLS/GHL), 2006 WL 1977469, at *18 (N.D.N.Y. July 11, 2006) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)).

In the context of a criminal trial, it is well established that a judge's questioning of a defendant does not violate his due process rights.

> A federal habeas court does not review a state trial judge's behavior under the same standard that a federal appellate court would employ on direct review of a federal trial judge's behavior. This is because . . . "[t]he only commands that federal courts can enforce in state courts are those of the Constitution." *Daye v. Attorney General*, 712 F.2d 1566, 1571 (2d Cir. 1983). Thus, to prevail on a claim of judicial misconduct, petitioner must show that the state trial judge's conduct was so fundamentally unfair as to deprive him of his constitutional right to due process. *Gayle v. Scully*, 779 F.2d 802, 806 (2d Cir. 1985); *Robinson v. Ricks*, 2004 WL 1638171 (E.D.N.Y. 2004). A judge does not deny a defendant due process of law merely by intervening in a trial to question witnesses. *Id*. It is well within the power of the trial judge to question witnesses, including the defendant.

*Brown v. McKinney*, 358 F. Supp. 2d 161, 172-73 (E.D.N.Y. 2005). Moreover, limitations on a judge's power to intervene in the context of a trial frequently focus on the appearance of such interference to the jury,[16] a concern that is not implicated at sentencing.

---

was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody).

[16] *See, e.g., Daye v. Attorney General of New York*, 712 F.2d 1566, 1572 (2d Cir.1983), *cert. denied*, 464 U.S. 1048 (1984) ("A trial judge's intervention in the conduct of a criminal trial would have to reach a

"Fundamentally, it is the 'court's prerogative, if not its duty, to assess the defendant's character and crimes at sentencing, after the defendant's guilt has been decided.'" *Francolino v. Kuhlman*, 224 F. Supp. 2d 615, 655 (S.D.N.Y. 2002), *affirmed*, 365 F.3d 137 (2d Cir. 2004) (quoting *United States v. Pearson*, 203 F.3d 1243, 1252, 1278 (10th Cir. 2000)).  Even "'undesirable' conduct on the part of the judge is not enough" to warrant habeas relief.  *Bessaha v. Rock*, No. 09-CV-3581, 2012 WL 1458195, at *18 (E.D.N.Y. Apr. 27, 2012) (citing *Daye*, 712 F.2d at 1572).  Accordingly, it is difficult for a petitioner to establish that a judge violated his due process rights at sentencing.  *See, e.g., Qualls v. United States*, No. 06-CV-5852, 2021 WL 2986707, at *10 (E.D.N.Y. July 15, 2021) (denying the petitioner's motion to vacate his sentence where the petitioner alleged that the Court "made disparaging remarks at sentencing" noting "a judge's comments during a proceeding that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" instead, "[t]he judge's opinions or comments must demonstrate such a high degree of favoritism or antagonism as to make fair judgment impossible.") (citing *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (internal quotations omitted); *Smith v. McGinnis*, No. 02-CV-1185, 2003 WL 21488090, at *3 (S.D.N.Y. June 25, 2003) (holding that the judge's "conduct and remarks did not create the kind of fundamental unfairness required by the Supreme Court in order to show the requisite deprivation of

---

significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.").

due process" where he, amongst other things, "suggested at sentencing that the parole board should never release petitioner[.]").

In the instant case, none of the interactions between Petitioner and the court exhibit the kind of antagonism or unfairness required to demonstrate a violation of Petitioner's due process rights.  Petitioner alleges that the Judge violated his due process rights by questioning Petitioner during his challenge to the constitutionality of his prior felony conviction.  *See* Pet. at 5-6, 15.  However, the questions the court asked of Petitioner sought to clarify the scope and reasoning of Petitioner's arguments, and were not the kind of antagonistic conduct which is necessary to demonstrate that habeas relief is warranted.  Moreover, it was the County Court's duty to inquire of Petitioner's objections to his previous conviction so that it could rule on those arguments.

During the April 21, 2015, hearing, the Court asked Petitioner what he would like to challenge, and what he meant when he said, "my prior convictions."  *See* SR 45-46. On July 16, 2015, the Court asked Petitioner to identify the legal theory supporting his argument that his prior conviction was unconstitutional, and to clarify, factually, whether Petitioner was, in fact, the individual convicted of the crime contained in the PSI.  *See* SR 80-82.  On August 27, 2015, the Court asked Petitioner: what the challenge was to the constitutionality of his prior conviction; what the basis for that specific challenge was; whether Petitioner was the individual convicted on that date; to explain the nature of the "constitutional violation" Petitioner claimed; and to provide any additional arguments, after the Court rejected the first.  *See* SR 218-22.  None of these questions suggest the County Court's conduct was so fundamentally unfair as to deprive

Petitioner of due process or demonstrated such a high degree of favoritism or antagonism as to make fair judgment impossible. Rather, it appears the Court was merely carrying out its sentencing duty to assess Petitioner's crimes and claims. Specifically, to make a decision on the constitutionality of the prior conviction Petitioner challenged, the court must have, at a minimum, obtained a sufficient understanding of what right Petitioner claims was violated and the supporting facts so that it could make an informed decision. Accordingly, Petitioner's claim that the County Court violated his due process rights is meritless.

### B. The People's Appellate Division Filings

Petitioner next contends he is entitled to habeas relief because the People filed false statements, false information, and a false instrument in submitting their brief to the Appellate Division, Third Department. *See* Pet. at 7-9, 15-16. Respondent argues this claim is unexhausted and not cognizable on habeas review. *See* Dkt. No. 16 at 15-18.

As explained above, in his pro se reply brief to the Appellate Division, Petitioner accused the People of filing false information. *See* SR 363-69, Petitioner's Reply Brief. Petitioner argued that the People "filed false statements and false information [in their brief] with [the Appellate Division"; therefore, the People filed "a false instrument in violation of [New York] penal law [§] 175.35[,] which is a [Class] (E) felony" and Petitioner urged that "respondent . . . be treated accordingly [sic] [and] charged." SR 364. Petitioner alleged that the People: (1) provided false information when they stated "'County Court [s]ubstantially [c]omplied with the procedures set forth in C.P.L. [§] 400.21[,']" because "respondent fail[ed] to mention that . . . the burden was [on the People] . . . [to] establish [Petitioner]'s prior convictions exist [sic]" (SR 364); and (2)

made a false statement when they wrote that "'[t]he [r]ecord [f]urther [d]emonstrates that the [Petitioner] was given a full and fair opportunity to be heard" in challenging his prior felony conviction (SR 365).  The Appellate Division rejected Petitioner's argument, stating "[w]e have considered the remaining contentions raised by defendant in his pro se supplemental briefs and find them to be unavailing."  *See Mercer*, 169 A.D.3d 1112.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  Relief does not lie for errors of state law.  *Id.*; *see also DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).  Therefore, Petitioner's claim that the People violated New York's penal law is not cognizable on habeas review.  Accordingly, any argument that Petitioner is entitled to habeas relief because of the People's alleged violation of P.L. § 175.35 is meritless.

In Petitioner's Memorandum of Law in support of the present petition, Petitioner argues that the People's claim that the County Court substantially complied with C.P.L. § 400.21:

> [I]s a very big lie [and] also violates § 1001. *U.S. v. Carey*[,] 152 F. Supp.2d 415 [(S.D.N.Y.] 2001[)] [c]ourt[s] have held that a false statement under § 1001 may constitute a continuing offense where there exists a "geographic discontinuity between the defendant's phy[s]ical making of the statement, whether oral or written, and the actual receipt of that statement by the relevant federal authority[."]

Pet. at 16.  Petitioner appears to allege that People violated 18 U.S.C. § 1001.  That statute states:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-- (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1001(a).  Petitioner's suggestion that the People violated 18 U.S.C. § 1001 is unexhausted because it was never presented to the state courts during a direct appeal or collateral challenge.  This argument, relying on a federal statute, may state the violation of a federal right; however, it is an argument separate and independent from those Petitioner proffered claiming violations of the New York State Penal Law.  Consequently, because the highest state court never has an opportunity to hear and decide the claim, the issue is unexhausted.  *See O'Sullivan*, 526 U.S. at 844-45.

Even assuming, arguendo, that this claim was exhausted by Petitioner's argument that the People violated New York P.L. § 175.35 in a supplemental brief in the Appellate Division, Petitioner's reliance on the federal statute is misplaced.  Specifically, the subsequent subsection explicitly states that "[s]ubsection (a) *does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding*."  *Id*. § 1001(b) (emphasis added).  Therefore, it is plainly inapplicable to the facts Petitioner argues.  Further, whether the People may have violated a federal statute prohibiting the making of false or fictitious statements to the government of the United States is not a matter properly addressed in a *petition for a writ of habeas corpus*.  *See Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is

31

limited to deciding *whether [the Petitioner's] conviction* violated the Constitution, laws, or treaties of the United States.") (emphasis added); *Patel v. Smith*, No. 21-CV-0992, 2022 WL 1460211, at *10 (E.D.N.Y. May 9, 2022) ("a habeas petitioner under Section 2254 must show that he is *in custody in violation* of the Constitution or laws or treaties of the United States . . . Petitioner nowhere connects the violations he alleges to his custody.") (emphasis in original) (quotations and citations omitted).

Liberally reading Petitioner's papers, *see Burgos*, 14 F.3d at 790, the instant Petition could be read as one arguing prosecutorial misconduct as petitioner asserts that the prosecutor used false evidence in the state's brief to the Appellate Division.[17] "The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth." *United States v. Universita*, 298 F.2d 365, 367 (2d Cir. 1962); *see also United States v. Myerson*, 18 F.3d 153, 162 n. 10 (2d Cir. 1994). For habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Anaya v. Brown*, No. 05-CV-8974, 2006 WL 2524079, at *11 (S.D.N.Y. Sept. 1, 2006) ("Prosecutorial misconduct does not give rise

---

[17] In his Traverse, Petitioner requests that if any of his claims are unexhausted, that this Court stay his petition so that he may exhaust his claims. *See* Traverse at 8. Liberally construing the instant petition to include a claim of prosecutorial misconduct results in an unexhausted claim because such arguments were never presented to that state courts. Accordingly, this claim, too, would also be unexhausted. However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A Court's discretion to deny a habeas claim is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. 269, at 277; *Grant v. Superintendent, Mohawk Corr. Facility*, No. 9:13-CV-01471 (JKS), 2015 WL 13850190, at *4 (N.D.N.Y. Apr. 7, 2015). For the reasons explained below, Petitioner's arguments are meritless, therefore, the undersigned recommends denying Petitioner's request to stay because it would be futile.

to a constitutional claim unless the prosecutor's act constitutes 'egregious misconduct.'") (citing *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003)).

"Manipulation of the evidence may indeed be egregious, but the merits of [a prosecutorial misconduct] claim 'will depend on the likely impact of the misconduct in light of the trial proceedings as a whole.'" *Anaya*, 2006 WL 2524079, at *11 (quoting *Miranda*, 322 F.3d at 181). This standard has been applied where petitioners have advanced claims that the government had misrepresented facts to the court in oral motions, occurring prior to or after a conviction, as well as written ones. *See Anaya*, 2006 WL 2524079, at *11-12; *Braun v. Morgan*, No. 1:11-CV-0886, 2014 WL 814918, at *50-51 (N.D. Ohio Feb. 25, 2014); *Brown v. Janssen*, No. 20-CV-1299, 2021 WL 2593474, at *6 (D. Minn. May 12, 2021), *report and recommendation adopted*, 2021 WL 2590152 (D. Minn. June 24, 2021). In light of the proceedings as a whole, the undersigned is unpersuaded that the D.A. engaged in misconduct that so infected the trial with unfairness as to deny Petitioner's due process rights.

Petitioner first contends the D.A.'s representation to the Appellate Division that Ulster County Court substantially complied with the procedures set forth in C.P.L. § 400.21 was false. *See* Pet. at 7-9; 15-16. The representation that County Court substantially complied with C.P.L. § 400.21 in determining Petitioner was a prior felony offender does not constitute a false statement, much less misconduct that so infected Petitioner's trial with unfairness as to deny his due process rights.

Under C.P.L. § 400.21, "where it appears that a defendant who stands convicted of a felony has previously been convicted of a predicate felony and may be a second felony offender . . . or a second felony drug offender" - § 400.21(1) - "a statement must

33

be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate felony conviction and whether the predicate felony conviction was a violent felony . . . . " - § 400.21(2).  "Where the uncontroverted allegations in the statement are sufficient to support a finding that the defendant has been subjected to a predicate felony conviction the court must enter such finding" - § 400.21(4) - however, "[w]here the defendant controverts an allegation in the statement and the uncontroverted allegations in such statement are not sufficient to support a finding that the defendant has been subjected to such a predicate felony conviction the court must proceed to hold a hearing" - § 400.21(5).

If such a hearing is held, "[t]he burden of proof is upon the people and a finding that the defendant has been subjected to such a predicate felony conviction must be based upon proof beyond a reasonable doubt by evidence admissible under the rules applicable to a trial of the issue of guilt."  C.P.L. § 400.21(7)(A).  "At the conclusion of the hearing the court must make a finding as to whether or not the defendant has been subjected to a predicate felony conviction, including a finding as to whether or not the predicate felony conviction was of a violent felony . . . . "  *Id*. § 400.21(7)(C).  However, "[a] previous conviction . . . which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to such a predicate felony conviction."  *Id*. § 400.21(7)(C).  Therefore, "[t]he defendant may, at any time during the course of the hearing . . . controvert an allegation . . . on the grounds that the conviction was unconstitutionally obtained."  *Id*.

At Petitioner's sentencing hearing,[18] County Court confirmed Petitioner and the Conflict Defender had received a copy of the prior felony information statement. SR 217. Petitioner's counsel indicated that he "d[id] not believe [Petitioner] ha[d] articulated or [wa]s able to articulate a legally cognizable basis to . . . challenge his previous felony convictions." SR 211; *see also* SR 217-28 ("I am not aware of any legally cognizable reason to challenge" the information contained in the prior felony information statement). Despite Petitioner's own attorney's representation that his prior conviction was not unconstitutionally obtained, County Court allowed Petitioner to present his arguments. *See* SR 218-22. After hearing Petitioner's arguments, County Court announced its "finding as to whether or not the defendant has been subjected to a predicate felony conviction." *See* C.P.L. § 400.21(7)(C). The undersigned is unable to determine, nor has Petitioner been able to demonstrate, that County Court failed to substantially comply with C.P.L. § 400.21.

Petitioner asks, "[i]f [County] Court complied [with C.P.L. § 400.21] where is the district attorney in the [August 27, 2015,] minutes of sentencing[?]" Pet. at 15. Petitioner appears to argue that, because the D.A. did not fully respond to Petitioner's argument that his prior conviction was unconstitutional, the People did not prove

---

[18] As explained above, on July 16, 2015, after County Court found Petitioner had violated the conditions of his plea agreement by providing inconsistent statements to the Probation Department Officer, County Court confirmed Petitioner's Attorney had received a copy of the prior felony information statement. *See* SR 80. The court asked whether Petitioner wished to controvert the information contained in the statement and Petitioner admitted he was convicted of the crime of criminal sale of a controlled substance in the third degree on August 10, 2011, but wished to controvert the constitutionality of the conviction. *See* SR 80-82. Accordingly, the court adjourned the proceedings to allow the parties to develop arguments regarding the constitutionality of the Petitioner's prior felony conviction. *See* SR 84. The parties returned to County Court on July 29, 2015, and County Court relieved Petitioner's retained attorney, and adjourned the proceedings again to allow Petitioner to retain another attorney. *See* SR 87-94. When Petitioner had not obtained substitute counsel by August 13, 2015, County Court assigned the Conflict Defender to represent Petitioner, and again adjourned the proceedings. *See* SR 96-100. Petitioner finally returned for sentencing, represented by the Conflict Defender, on August 27, 2015. *See* SR 210-27.

"beyond a reasonable doubt" that Petitioner "ha[d] been subjected to . . . a predicate felony conviction"; therefore, the D.A.'s later representation that County Court complied with C.P.L. § 400.21 was false. *See* C.P.L. § 400.21(7)(A). This argument is wholly meritless.

As an initial matter, the constitutionality of Petitioner's previous conviction had already been affirmed by the Appellate Division. *See People v. Mercer*, 81 A.D.3d 1159 (3rd Dept. 2011). Moreover, Petitioner's own counsel admitted that Petitioner was not able to "articulate a legally cognizable basis to . . . challenge his previous felony convictions." SR 211. The fact that the D.A. did not respond to Petitioner's non-cognizable attempt to challenge the constitutionality of his prior conviction does not mean the D.A. failed to prove that Petitioner "ha[d] been subjected to . . . a predicate felony conviction" beyond a reasonable doubt.

Furthermore, even if, *arguendo*, Petitioner were able to demonstrate that the D.A.'s representation that County Court substantially complied with C.P.L. § 400.21 was somehow false or misleading, it is doubtful that such a representation "so infected Petitioner's trial with unfairness" as to deny his due process rights. The D.A.'s argument that County Court complied with C.P.L. § 400.21 was contained in a brief to the Appellate Division. *See* SR 285-86. Petitioner filed a reply brief contesting the D.A.'s argument and explaining why he believed the D.A. was incorrect. *See* SR 363-69. The Appellate Division was tasked with determining, *inter alia*, whether the trial court erred in denying Petitioner's challenge to the constitutionality of his prior felony conviction. The Appellate Division affirmed Petitioner's conviction and thus the County

36

Court's determination that Petitioner was a second felony offender, finding Petitioner's arguments "unavailing."  *See Mercer*, 169 A.D.3d at 1114.

Petitioner next contends the D.A. falsely represented to the Appellate Division that Petitioner was given "a full and fair opportunity to be heard" in challenging his prior felony conviction.  *See* Pet. at 7-9; 15-16.  Again, Petitioner is plainly incorrect.

Petitioner admitted on multiple occasions that he was convicted of the crime of criminal sale of a controlled substance in the third degree in 2011.  *See* SR 82 ("The Court: . . . factually, were you convicted on August 10th, 2011[,] of the crime of criminal sale of a controlled substance in the third degree?  Were you convicted of that? [Petitioner]: Yes."); SR 220 ("The Court: . . . Was it your or was it not, sir, that was convicted of that crime in front of Judge Ceresia? [Petitioner]: Yes, it was me in front of him . . . . ").  Further, Petitioner does not contest that the prior felony information statement accurately identified him as having been previously convicted of a felony. *See* C.P.L. § 400.21(2).  Therefore, the sole remaining matter for the County Court to determine was whether Petitioner's prior felony conviction "was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States."  *See id*. § 400.21(7)(C).

County Court provided Petitioner an opportunity to contest the constitutionality of his prior conviction.  *See* SR 210-22.  County Court first heard arguments from Petitioner's counsel.  *See* SR 211.  Despite the statement of Petitioner's own attorney that he did not believe Petitioner "[wa]s able to articulate a legally cognizable basis to . . . challenge his previous felony convictions[,]" *see* SR 211, County Court received Petitioner's letter and heard the arguments Petitioner made on his own behalf.  *See* SR

213-22.  Accordingly, the D.A.'s representation that Petitioner given "a full and fair opportunity to be heard" was not a manipulation of the evidence that so infected the trial with unfairness as to deny Petitioner's due process rights.  Therefore, Petitioner is not entitled to habeas relief on his liberally-read claim of prosecutorial misconduct.

### C.  Ineffective Assistance of Counsel

Petitioner next argues he is entitled to habeas relief because he was denied the effective assistance of counsel.  Pet. at 8-9; 16-17.  Specifically, Petitioner argues his attorney "took a stand against [Petitioner] when [counsel] . . . [stated '] I do not see any reason why [Petitioner] cannot be sentenced today . . . .[']"  Pet. at 8.  To begin, it is not readily apparent to which of Petitioner's attorneys this vague description of alleged ineffective assistance refers.

On April 21, 2015, Petitioner appeared in County Court for sentencing, represented by his retained counsel, Mr. Singer.  *See* SR 44-49, Transcript of Hearing April 21, 2015. The hearing began with the following discussion:

| | |
|---|---|
| The Court: | Is there any legal cause why sentence cannot be imposed? |
| [Pet. Atty.]: | None that I know of, your Honor. |
| The Court: | It was my understanding your client wants to withdraw his plea of guilty? |
| [Pet. Atty.]: | He hasn't informed me of that at all. |
| The Court: | Is that accurate, sir? |
| [Petitioner]: | Yes. |
| The Court: | What is the basis for you wishing to withdraw your plea of guilty? |
| [Petitioner]: | On the base that I [sic] like to challenge a few things in my case. |
| The Court: | What would you like to challenge? |
| [Petitioner]: | My prior convictions. |
| The Court: | Your prior convictions meaning what, sir? |
| [Petitioner]: | Meaning what's unconstitutionally obtained, which they were. |

SR 45-46.  As previously stated, the hearing was adjourned after the Court determined

an *Outley* hearing would be necessary.  *See* SR 47-48.

During the Court's second sentencing hearing, on July 16, 2015, Petitioner

remained represented by his retained counsel, Mr. Singer.  *See* SR 51-85, Transcript of

Hearing July 16, 2015.  On that date, after the Court concluded Petitioner had, in fact,

violated the terms of his plea agreement, the following exchange occurred:

> The Court:      Now, both sides prepared for sentence?
> [A.D.A.]:       Yes, Judge.
> [Pet. Atty.]:   Yes, your Honor.
> The Court:      Any legal cause why sentence could not be imposed, [A.D.A.] Grimes?
> Mr. Grimes:     No, Judge.
> The Court:      Any legal reason why sentence cannot be imposed, Mr. Singer?
> [Mr. Singer conferred with Petitioner]
> Mr. Singer:     No legal reason that it cannot be done today.

SR 79-80.  After that hearing was adjourned, the parties returned to Court on July 29,

2015, and Petitioner relieved Mr. Singer from representing him.  *See* SR 87-94,

Transcript of Hearing July 29, 2015.  After that third attempt at sentencing was

adjourned, Petitioner returned to Court on August 13, 2015, when the Court assigned

the Conflict Defender, Mr. Hoerter, to represent Petitioner, and again adjourned to allow

Mr. Hoerter to review the case.  *See* SR 96-100, Transcript of Hearing August 13, 2015.

Finally, Petitioner returned to Court on August 27, 2015, represented by Mr. Hoerter,

when the following discussion ensued:

> The Court:      . . . Mr. Hoerter, any legal cause why sentence cannot be performed?
> [Pet. Atty.]:   I do not believe so, Judge.  I just would note two weeks ago the Court appointed me to this case in light of the fact [that Petitioner] had desired to withdraw his plea and make some other challenges.  I did have an opportunity to meet

> with him and I listened very carefully to everything he had to say. I do not believe he has articulated or is able to articulate a legally cognizable basis to withdraw the plea or challenge his previous felony convictions. Nonetheless, he tells me that's what he wishes to do.

SR 211; *see also, generally*, SR 210-27, Transcript of Hearing August 27, 2015.

Although the language from the April 21, 2015, and July 16, 2015, hearings more closely resembles that used by Petitioner in the instant petition, there were two occasions on which the Court asked an attorney whether sentencing could proceed, and the attorney answered that there was no reason why it could not. *See generally*, SR 44-49, Transcript of Hearing April 21, 2015; SR 51-85, Transcript of Hearing July 16, 2015; SR 210-27, Transcript of Hearing August 27, 2015. Therefore, liberally reading Petitioner's papers, the ineffective assistance claim could refer to either his retained attorney, Mr. Singer, or, his assigned counsel, Mr. Hoerter.[19] Accordingly, this Court will address both attorneys' representations of Petitioner.

### 1. Mr. Singer's Representation of Petitioner

Under the well-established standard governing ineffective assistance of counsel claims,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

[19] *See, Burgos*, 14 F.3d at 790 ("Because [Petitioner] is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.") (citation omitted).

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance is "constitutionally deficient" when the attorney's actions fall "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  "Prejudice" is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The Second Circuit has held the "[f]ailure to make a meritless argument does not amount to ineffective assistance."  *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *overruled on other grounds by Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003); *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (summary order).

Petitioner contends "counsel took a stand against [P]etitioner[, because] he failed to investigate[ P]etitioner['s] challenge to his prior conviction [as] having been obtained unconstitutionally."  Pet. at 16.  However, Petitioner is unable to demonstrate that but for Mr. Singer's failure to challenge Petitioner's prior felony conviction, the result of the sentencing proceeding would have been different.  In other words, but for counsel's failure to challenge the constitutionality of the prior felony conviction, Petitioner would not have been sentenced as a prior felony offender.  *See, e.g., Calhoun v. Walker*, No. 97-CV-0550 (NAM/GLS), 1999 WL 33504437, at *9 (N.D.N.Y. Feb. 26, 1999)[20] ("Petitioner has failed to show that but for these alleged errors, he would not have been sentenced as a persistent felony offender.").

In order for Petitioner to not have been sentenced as a prior felony offender, his attorney not only would have had to challenge the constitutionality of that prior

---

[20]  The Court has provided petitioner with copies of any *unpunished* cases cited in this Report-Recommendation & Order.

conviction, but prevail in that challenge.  First, Petitioner *did* in fact argue his 2007 conviction was unconstitutionally obtained to the County Court at a later sentencing hearing, and the Court rejected his argument.  *See* SR 218-22.  Additionally, Petitioner attempted to appeal that decision to the Appellate Division, arguing in his pro se brief that his previous conviction "was obtained in violation of . . . [his rights] . . . under the . . . Constitution of the United States."  SR 525.  The Third Department rejected Petitioner's challenge, finding it to be "unavailing."  *Mercer*, 169 A.D.3d at 1114.

It is therefore apparent that Petitioner's claim that his prior conviction was unconstitutional is meritless.  Because an attorney's failure to make a meritless argument does not amount to ineffective assistance, Petitioner was not denied the effective assistance of counsel when Mr. Singer instructed the Court there was no reason why sentencing could not proceed on July 16, 2015, and did not then challenge the constitutionality of Petitioner's prior felony conviction.

### 2.  Mr. Hoerter's Representation of Petitioner

Petitioner's assigned counsel, Mr. Hoerter, similarly represented to the Court there was no legal basis on which to challenge Petitioner's prior felony convictions. Apparently referring to Mr. Hoerter, Petitioner avers Counsel "put in no motions [and] the only time that [Counsel] said a word it was against [Petitioner]."  Pet. at 8.

As explained above, the "[f]ailure to make a meritless argument does not amount to ineffective assistance."  *Arena*, 180 F.3d at 396.  Accordingly, the Court recommends dismissal of Petitioner's ineffective assistance claim(s).[21]

---

[21] Respondent also argues that Petitioner's ineffective assistance claim, at least as applied to Mr. Hoerter's representation of Petitioner at sentencing, is unexhausted. Because the Court finds that Petitioner's ineffective assistance claim(s) are without merit, this additional argument need not be considered. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the

### D. Voluntary, Knowing, and Intelligent Plea

Finally, Petitioner argues that he is entitled to habeas relief because his entry of a plea of guilty was not voluntarily, knowingly, and intelligently made.  Pet. at 10-11. Respondent argues that this claim is procedurally barred and meritless.  Dkt. No. 16 at 20-24.  The undersigned agrees.

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."  *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation omitted).  "State rules count as 'adequate' if they are 'firmly established and regularly followed.'"  *Johnson v. Lee*, 578 U.S. 605, 606 (2016) (quoting *Walker*, 562 U.S. at 316).

> Under New York law, challenges to the voluntariness of a guilty plea must be presented to the state court in one of three ways: a motion to withdraw the plea before sentencing, a post-judgment N.Y. CRIM. PROC. LAW § 440.10 motion in the trial court, or on direct appeal if the record permits . . . Absent a defect in the plea allocution, the failure to move to vacate a guilty plea in the trial court results in an unpreserved claim that is not reviewable in New York's appellate courts.

*Mobley v. Zenzen*, No. 9:15-CV-1001 (LEK), 2016 WL 1049007, at *7 (N.D.N.Y. Mar. 11, 2016) (citations omitted).  "New York courts apply this preservation rule because

---

failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

'[t]he failure to make the appropriate motion denies the trial court the opportunity to address the perceived error and to take corrective measures, if needed.'" *Terry v. Fowles*, No. 15-CV-5800, 2021 WL 4197198, at *5 (E.D.N.Y. Sept. 15, 2021) (quoting *People v. Lopez*, 71 N.Y.2d 662, 665-66, 525 N.E.2d 5, 6 (N.Y. Ct. App. 1988)). "Federal courts in this and other districts in New York, have routinely recognized that the preservation rule provides an adequate and independent state ground on which to deny habeas relief." *Mobley*, 2016 WL 1049007, at *7 (citing *Smith v. Superintendent of Wende Corr. Facility*, No. 10-CV-0901, 2015 WL 1036328, at *7 (W.D.N.Y. Mar. 10, 2015) ("[T]he Appellate Division's determination that petitioner failed to preserve [his claim that his plea was not knowing and voluntary] for review renders the claim procedurally defaulted.")), *appeal dismissed*, No. 15-880 (2d Cir. Sept. 22, 2015); *Belle v. Superintendent*, No. 11-CV-0657 (NAM), 2013 WL 992663, at *5 (N.D.N.Y. Mar. 13, 2013) ("It is well settled in this Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief, and this Court agrees with the analysis contained in these decisions.") (additional citations omitted)).

Here, in his counseled brief, Petitioner argued to the Appellate Division that his plea of guilty was not knowing and voluntary. *See* SR 144-46. The Appellate Division found this claim was unpreserved for review because Petitioner did not make a postallocution motion challenging the voluntariness of his plea, and the facts of Petitioner's case did not warrant application of a narrow exception to the preservation rule allowing review where a defendant makes statements calling into question the voluntariness of his plea during the colloquy. "Because the Appellate Division rejected this claim on independent and adequate state procedural grounds, federal review is

barred unless petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim." *Belle,* 2013 WL 992663, at *5 (citing *Coleman*, 501 U.S. at 729); *see also Mobley*, 2016 WL 1049007, at *8 ("Because the Appellate Division explicitly invoked the preservation rule to bar appellate review of Petitioner's claim, federal habeas review is also barred unless [he] establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim.").

Petitioner has not established an external cause for his default or that prejudice has resulted. Moreover, Petitioner has not demonstrated that a fundamental miscarriage of justice would result from this Court's failure to review the claim by showing that he is "actually innocent." Accordingly, Petitioner's claim that his plea was not knowingly, voluntarily, and intelligently entered is procedurally barred and it is recommended that such claim be dismissed.[22]

### E. Petitioner's Traverse

In his traverse, Petitioner "submits [a] motion for summary judgment," arguing "[t]he [County] [C]ourt and [the] [P]eople ha[ve] no qualified immunity" and "violated [P]etitioner's constitutional right to due process[.]" Traverse at 4. Petitioner also alleges the Attorney General made false statements in their response to this Court, and "request[s] that this [C]ourt strike the entire answer and memorandum of law." Traverse at 6. Petitioner does not provide a basis for this latter request. *See* Traverse at 6-9.

---

[22] Respondent avers that Petitioner's challenge to the voluntariness of his plea is also meritless. *See* Dkt. No. 116 at 20-24. Because the Court concludes that the claim is barred from habeas review, this argument need not be considered.

### 1. Summary Judgment

The purpose of federal habeas corpus petitions brought pursuant to 28 U.S.C. § 2254 is to test the constitutionality of confinement after either a state court conviction or a decision relating to parole or good time.  Motions for summary judgment are rarely appropriate in the context of habeas corpus actions, which are subject to specific rules.  *See generally* Habeas Rules; *see also Whitaker v. Meachum*, 123 F.3d 714, 716 n.2 (2d Cir. 1997) (per curiam) (noting that summary judgment motions may be heard in a habeas action to the extent such motions are consistent with the Habeas Rules); *Corines v. Warden, Otisville Fed. Corr. Inst.*, No. 1:05-CV-2056, 2008 WL 4862732 at *2 (E.D.N.Y. Jun. 10, 2008) ("[A] summary judgment motion is appropriately brought in a habeas case only where the motion would avoid the need for a full review of the trial record, such as when there is a question of jurisdiction."), *adopted by* 621 F. Supp. 2d 26 (E.D.N.Y. 2008). . . [N]othing in the Habeas Rule "contemplates the disposition of habeas petitions by motion for summary judgment." *Mitchell v. Goord*, No. 9:03-CV-0019 (GLS), 2005 WL 701096, at *3 (N.D.N.Y. Mar. 21, 2018).

*See Chase v. Wolcott*, No. 9:21-CV-0473 (MAD/TWD), 2021 WL 5232689, at *3 (N.D.N.Y. Nov. 10, 2021) (additional citations omitted).  Petitioner does not establish a purpose for such a motion, rather, he requests "that if this [C]ourt do[es] so find the[re are] false statements in the answer and the memorandum of law[, P]etitioner request[s] that this [C]ourt strike the answer and the memorandum from the record and gr[ant P]etitioner's habeas [petition] and have [P]etitioner release[d] immedi[ately]."  Traverse at 6.

"In sum, a motion for summary judgment is an inappropriate procedural vehicle to achieve the relief requested; however, the pending habeas corpus petition is not." *Chase*, 2021 WL 5232689, at *3.  Accordingly, Petitioner's motion for summary judgment is denied.

### 2. False Statements

Petitioner alleges the Assistant Attorney General made two false statements in filings with this Court.  *See* Traverse at 6.  Petitioner first argues the Attorney General's contention "that [P]etitioner has [not] exhausted [Petitioner's] claim of ineffective assistance of counsel" is false because "[P]etitioner [had] raised the issue in County Court . . . and . . . in the [A]ppellate [D]ivision . . . ."  Traverse at 6.

As explained in Section (IV)(C), *infra*, it was not clear from the face of the instant petition which attorney Petitioner alleged provided ineffective assistance.  Moreover, in his Appellate Division briefs, Petitioner's claim was that his retained defense counsel, Mr. Singer, was ineffective for *failing to move to withdraw Petitioner's guilty plea* on the basis of his mental capacity.  *See* SR 146-48.  Therefore, the Attorney General's contention, that Petitioner's claim *that his counsel erred for failing to support Petitioner's pro se motions at sentencing* was unexhausted, is not a false statement.  *See* Dkt. No. 14 at 20.  At most, the Attorney General improperly understood the argument Petitioner made to this Court, and responded truthfully to the argument they believed Petitioner to have made.

Petitioner further argues, "[t]he [Assistant Attorney General] argued that the [S]tate [C]ourt substantially complied with the procedure set forth in C.P.L. § 400.21 . . . in adjudicating [P]etitioner [as] a second felony offender."  Traverse at 6.  Petitioner claims this is a "false statement" because the Assistant Attorney General "argued [P]etitioner was given a fully opportunity to be heard" when, in fact, "the [County C]ourt questioned [P]etitioner regarding the [prior offense,] which the [C]ourt had no right to do . . . [and] the [C]ourt [sic] 'denied [Petitioner's] application[.]'"  Traverse at 6.

47

As explained in Section (IV)(A), *infra*, it is clear that the County Court complied with due process requirements during Petitioner's sentencing hearings. It is evident from the record that Petitioner had the opportunity to be heard, and the Court considered each of Petitioner's arguments. The fact that the County Court did not grant Petitioner's application does not mean the Court denied Petitioner the opportunity to be heard, nor does it mean the Court failed to comply with state court requirements for sentencing as a second felony offender. Further, any claim that the County Court "had no right to question" a defendant during sentencing is completely meritless.

In sum, the Court has conducted a thorough review of the State Court records, and the Parties' papers in drafting the present Report and Recommendation, and does not see any just reason to dispose of any portion of the Parties' papers.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**RECOMMENDED**, that the Petitioner's Motion for Summary Judgment and Request to Reject Respondents' Filings, Dkt. No. 21, be **DENIED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; [23] and it is further

---

[23] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

**RECOMMENDED**, that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED**, that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).[24]

Dated: January 9, 2023
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[24] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  See Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).